CHASEZ, Judge.
Plaintiff, Anna Williams Meyers, sued her husband, Arthur Meyers, for separation from bed and board on the grounds of abandonment. The defendant answered, denied the allegations of the petition, asked for dismissal of the suit and, by reconven-tíonal demand, prayed for judgment of separation from bed and board in his favor for alleged cruel treatment. After trial on the merits, the court rendered its judgment in favor of plaintiff and against the defendant, granting plaintiff a separation from bed and board and holding that she was without fault.
From this judgment, defendant has appealed.
The only pertinent evidence submitted by the plaintiff in this matter was her testimony, which was to the effect that her husband abandoned her without cause or provocation and removed all of his clothes from the matrimonial domicile, stating that the did not ever intend to return. The lone witness which plaintiff presented on her behalf, could only testify that the plaintiff worked for her as a servant and that occasionally she drove her home and did not at any time see her husband or any other person around the place. She testified likewise that she paid to the plaintiff herein approximately $40.00 a week for her services. It is fair to state that she had no knowledge of the affairs of the plaintiff and her husband and her testimony did not contribute anything to plaintiff’s cause.
It is true that the defendant left the matrimonial domicile on December 3, 1963 and did not return. The record however reveals that the defendant was warranted in leaving the matrimonial domicile and remaining away. It clearly establishes his allegations of cruel treatment on this occasion as he was assaulted by his wife and ordered to leave the premises and not return. The following passage from the evidence of Arthur Meyers indicates what transpired on this occasion:
Q “Could you tell me what transpired at the time that you separated from, your wife?
A Well at the time I came into the-house and my wife was sitting at the-front door, and when she see me-come in the house she said where-have you been. I say I have been’ working and I have been looking for my money but the boss man hadn’t came in yet and I had to go back out again to get my money, and then she starts to fighting me. She took a knife and tried to stab me and I ran out the house. When I came-back she had my clothes thrown on the floor at the front door and told' me to get out this house and never-come back and give me my door key. And I told her, I said there’s enough-room in this home for both of us to-live in it. I say why not let me live . in one of the bedrooms and take a window out and cut a door there where I won’t have to come through-your part of the house. That wasn’t sufficient enough. So she told me to ■ get out, get my clothes and get out. So I taken my clothes. She had' thrown them on the floor and bundled them in the sheet, and I give her the doorkey and told her I was. not coming back.
Q Mr. Meyers, how many times have ■ you been separated from your wife since your marriage?
A Five times.
Q Five times, could you tell me approximately when or what year perhaps *791 the first time you separated from your wife?
A Well the years definite I couldn’t know at the time it were, but it was since ’59, ’60 and ’61.
Q Those were the times that you separated ?
A Yes, sir.
Q ’59, ’60 and ’61 ?
A Yes,- Sir. Then, of course, the occasion now.
BY THE COURT:
Yes. Where do you work?
BY THE WITNESS:
I was working with a subcontractor named Eddie Comiskey.
BY THE COURT: -
And you got off of work what time?
BY THE WITNESS:
Well we generally gets 7:30, quarter to 8:00.
BY THE COURT:
Well what time did you get off work generally ?
BY THE WITNESS:
We don’t have any special time. We worked from around nine o’clock in the morning maybe seven, eight o’clock at night sometimes.”
This was corroborated by the testimony of Leonard Reed, a mutual friend of both plaintiff and defendant, who was present when it occurred. He testified:
Q “Could you tell the Court if you were present during the time of the last separation?
A Yes, sir.
Q Brought between Arthur Meyers and his wife?
A I was present
Q What happened?
A Well we had been working and Meyer and I and we had worked late, gone to work kind of late sometimes and get off late, working for Eddie Comiskey.
BY THE COURT:
Speak up now where everyone can hear.
A We stopped, we went by Eddie to pick up our money around six o’clock. Eddie wasn’t there. So we left and went; while we was gone we stopped some place and had a beer. So we went back by Eddie’s house. Eddie wasn’t there. We sit in the car awhile and he told me let’s go home and get something to eat. So I said well OK then. So we went on by his house. When we got home his wife start fussing with him; little while after that they start fighting and I was trying to stop them. I told them, you know, don’t do that. So Meyer run out the back door. He stayed out there awhile. He was trying to come back in. She didn’t want him to come back. She ran and got a knife out the drawer for him. I said, told them you all cut that out, put the knife down. They wouldn’t stop. So I said well I’m going to leave. So they come and start tugging again. Meyer ran. So he didn’t come back. When he did come back in she had put the knife down. That’s all it was to it. I tried to talk them to go back together; they wouldn’t go back.
Q Mr. Reed, could you tell the Court if there were any other witnesses of this event other than yourself?
A No, just the three of us was there.”
The record likewise discloses that the plaintiff had an ungovernable temper *792 which more or less contributed to five former separations between these parties. However, on December 3, 1963, when the explanation for his arriving home at 7:30 in the evening was apparently not satisfactory, it resulted in a verbal and physical assault by the plaintiff on the defendant, and the defendant left the house in order to avoid further friction between him and his wife. He remained in the rear of the premises. Reed, who was there at the time, states that he persuaded her to lay aside the knife she had in her hand and when the defendant again entered the kitchen of the premises he was ordered out of the house by his wife and told not to return. The defendant and Reed left the premises, visited their boss and secured their wages. When the defendant returned home, he found that all of his clothes had been thrown on the floor and he was informed by his wife that he could not stay on the premises.
The plaintiff testified that he attempted to persuade his wife to permit him to remain in one room of the house, which could be locked against him and he could use it by converting the window into a door so that they could occupy the same house without in any manner interfering with each other; however he states that this suggestion was refused. He further testified that they had separated approximately five times and that on other occasions his wife had threatened him with a knife and on one occasion had actually cut his leg. He stated that on this occasion he feared that his wife would harm him with the knife.
The only witness presented by the defendant in this matter was Leonard Reed, who was present at the occurrence herein related on December 3, 1963. Reed, who was a friend of both Arthur Meyers and the plaintiff, wholly corroborated the testimony of Meyers. He stated that Meyers did everything that was possible in order to prevent friction between him and his wife, all of no avail.
It is to be noted that the plaintiff filed no answer to the appeal in this matter and made no appearance in this Court whatever, either in person or by counsel, although she was notified, as the record will disclose, of the date this matter was set for trial. It it also to be noted that the testimony of the defendant and Leonard Reed stands unrefuted in the record, the plaintiff having made no attempt to deny it by producing witnesses or by taking the stand on her own behalf, though she was present during the course of the entire trial. In view of this uncontradict-ed evidence produced by the defendant, we must necessarily find that the defendant was free from fault in this matter and that the separation between the parties occurred as a result of the actions of the plaintiff, which constitute cruel treatment and warrant the reversal of the judgment in favor of the plaintiff and the granting of a judgment of separation of bed and board in favor of the defendant on his re-conventional demand.
There is no doubt in the mind of the Court that, from the evidence submitted, the judgment of our learned brother below is manifestly erroneous and should be reversed.
There is one other matter to which the court must direct its attention. During the course of the litigation, plaintiff sought alimony, and the record discloses that judgments for the payment of alimony were rendered in her favor. The District Judge, however, stated at the conclusion of the trial of the case that while he intended to grant the wife a separation from bed and board that he would not cast the defendant for alimony because he was ill and unable to pay it. The counsel for plaintiff at that time stated that the record substantiated such a conclusion and besides plaintiff was earning $40.00 a week as a result of her employment. Under the circumstances, all orders of record for the payment of alimony which were not annulled by the judgment of the District Court shall be reversed and set aside.
*793 It is therefore ordered, adjudged and decreed that the judgment of the District Court in favor of the plaintiff, Anna Williams Meyers, dated October 22, 1965, under the terms of which the said plaintiff was granted a separation of bed and board against her husband be, and the same is, hereby reversed.
It is further ordered, adjudged and decreed that there now be judgment in favor of defendant Arthur Meyers, on reconven-tional demand, granting him a separation from bed and board from plaintiff, Anna Williams Meyers, and all judgments and orders of the District Court rendered in favor of plaintiff awarding her alimony be and same are rescinded and annulled.
All costs of these proceedings in both Courts shall be borne by the plaintiff, Anna Williams Meyers.
Reversed and rendered.